UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LIDIA M. ORREGO,

                    Plaintiff,

        v.

PASTERNACK TILKER ZIEGLER
WALSH STANTON & ROMANO
LLP, et al.,

                    Defendants.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
23-CV-06507-SJB-AYS

**BULSARA, United States District Judge:**

Plaintiff Lidia M. Orrego ("Orrego") filed this pro se action against a law firm and individuals who were involved in her prior workers compensation action: Defendants Pasternack Tilker Ziegler Walsh Stanton & Romano LLP and Pasternack Tilker Weitz & Luxenberg LLP (together, "Pasternack")[1], First Choice Evaluations LLC ("First Choice"), and Jason Hochfelder MD ("Dr. Hochfelder") (collectively, "Defendants"). (Compl. filed Aug. 31, 2023, Dkt. No. 1 ¶ 1). She alleges their conduct constituted a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (Am. Compl. filed Mar. 21, 2025, Dkt. No. 41 ¶ 1). Defendants have moved to dismiss this single claim with prejudice. (First Choice & Dr. Hochfelder Mot. to Dismiss

---

[1] Although Orrego lists Pasternack Tilker Ziegler Walsh Stanton & Romano LLP and Pasternack Tilker Weitz & Luxenberg LLP as two separate entities and defendants, they appear to be a single firm. *See* Pasternack Tilker Ziegler Walsh Stanton & Romano LLP Home Page, https://www.workerslaw.com (last visited Jan. 15, 2026); (*see also* Compl. at 3–4 (listing the same address for both)).

filed Aug. 8, 2025, Dkt. No. 81; Pasternack Mot. to Dismiss filed Aug. 11, 2025, Dkt. No. 88). For the reasons explained, the Court grants Defendants' motions.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purpose of this motion, the Court is "required to treat" Orrego's "factual allegations as true, drawing all reasonable inferences in favor of [her] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.* In addition to the Complaint, the Court considers documents that are incorporated by reference, documents which are integral to the pleading, and documents of which the Court takes judicial notice, including those filed in another court proceeding. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).[2]

On September 5, 2019, Orrego entered into an agreement with Pasternack to have them represent her in her claim before the Workers Compensation Board ("WCB"). (Am. Compl. ¶ 16). The Claim sought an award of damages for work-related injuries and occupational diseases Orrego allegedly sustained while working for Kevin

---

[2] Orrego notes Defendants failed to provide her the "Notice to Pro Se Litigant" required by Local Civil Rule 12.1. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss filed Aug. 8, 2025, Dkt. No. 82 at 28–29). The Notice provides guidance to a pro se litigant on how to proceed should a defendant rely on extra-complaint materials on a motion to dismiss. The Court does not rely on anything beyond the Amended Complaint in evaluating the motion to dismiss.

Knipfing (a/k/a Kevin James) and Stephanieanna Knipfing in 2018.  (*Id.* ¶¶ 12–13, 23; *see also* Pre-Hearing Conference Statement attached to Am. Compl. as Ex. 3, Dkt. No. 41 at 52).  When Orrego retained Pasternack, she also signed a Health Insurance Portability and Accountability Act ("HIPAA") Form and provided Pasternack with a "copy of [her] entire medical record[]" from each of her providers.  (*Id.* ¶ 16).  Pasternack filed Orrego's claim before the WCB on September 20, 2019.  (*Id.* ¶ 18).

On October 22, 2019, Pasternack filed a "Pre-hearing conference statement" that failed to list all of Orrego's medical reports from treating doctors and omitted other evidentiary support that Orrego provided.  (*Id.* ¶ 19).  On several other occasions, Pasternack failed to file relevant evidence and forms Orrego shared.  (*E.g.*, Am. Compl. ¶ 26 (failing to file HIPAA forms); *id.* ¶¶ 28–29 (failing to file medical records)).

On October 14, 2020, Orrego appeared for an independent medical examination ("IME") with Dr. Hochfelder who was selected by First Choice as part of the WCB proceedings.  (*Id.* ¶ 38).  In his report, Dr. Hochfelder concluded that Orrego's complaints and ailments "seem[ed] extremely out of proportion to her alleged work injury" and that he "d[id] not believe that the alleged injuries are the result of [Orrego's] work activities from the job held from January 2018 to November 2018 based on the medical records that are provided to date."  (IME Report, attached to Am. Compl. as Ex. 5, Dkt. No. 41 at 64).  Orrego alleges that the report "was not based on [her] complete medical record since 2018" because it did not include information from her providers through private insurance.  (Am. Compl. ¶ 43).  Orrego also recorded Dr. Hochfelder's examination, a recording that lasted only five minutes and three seconds in length, in

3

contradiction to Dr. Hochfelder's assertion in the report that the exam lasted 20 minutes.  (*Id.* ¶¶ 42, 58).

During a WCB hearing on October 28, 2020, a Pasternack associate did not challenge Dr. Hochfelder and his report's credibility with Orrego's recordings.  (*Id.* ¶ 47).  Dr. Hochfelder subsequently filed an IME Addendum on December 22, 2020, adding notes from Orrego's private providers, but otherwise left his opinion unchanged, including the asserted length of the exam.  (*Id.* ¶ 55).  He was deposed on January 4, 2021, and again asserted that the examination lasted 20 minutes.  (*Id.* ¶¶ 57–58).  The Pasternack associate who conducted the deposition did not challenge this assertion.  (*Id.* ¶¶ 60–61).

WCB Judge Barry Greenberg issued a Notice of Decision on March 10, 2021, disallowing Orrego's claim and finding her testimony that she was injured in the course of her employment "not credible."  (Am. Compl. ¶ 69; WCB Decision, attached to Am. Compl. as Ex. 7, Dkt. No. 41 at 90).  Pasternack applied for Board Review, but the decision was affirmed by a WCB Panel.  (Am. Compl. ¶¶ 74, 76).  Orrego subsequently appealed pro se the panel's decision to the Appellate Division, Third Department.[3]  (*Id.* ¶ 80).

---

[3] The Appellate Division, Third Department denied Orrego's appeal on November 2, 2023, finding that the WCB Board "did not act in an arbitrary or capricious manner or abuse its discretion in denying the application" and rejecting as "without merit" Orrego's contentions that the Board's denial was the result of conspiracy and fraud.  *Matter of Orrego v. Knipfing*, 221 A.D. 3d 1112, 1112–13 (3d Dep't 2023) (citations omitted).  Orrego sought reconsideration and moved to vacate the order, and these motions were also denied.  *See* Order on Mot. to Vacate, *Matter of Orrego v. Knipfing*, No. 535740 (3d Dep't Dec. 27, 2024), Dkt. No. 206; Order on Mot. for Reconsideration, *Matter of Orrego v. Knipfing*, No. 535740 (3d Dep't Mar. 20, 2025), Dkt. No. 219.

4

Orrego commenced this action on August 31, 2023.[4]  (Compl.).  Defendants sought leave to dismiss Orrego's Complaint by pre-motion letter.  (First Choice & Dr. Hochfelder Mot. for Premotion Conference ("PMC") dated Oct. 10, 2023 ("First Choice & Hochfelder PMC Mot."), Dkt. No. 13; Pasternack Mot. for PMC dated Oct. 13, 2023 ("Pasternack PMC Mot."), Dkt. No. 19).  The Court waived the PMC requirement and directed full briefing on Defendants' motions to dismiss.  (Order dated Nov. 1, 2023).  In light of Orrego's pending appeal in a related case, the Court entered a stay on November 14, 2023.  (Order dated Nov. 14, 2023).  On May 15, 2024, the Second Circuit determined that it lacked jurisdiction over Orrego's appeal and dismissed it.  (Mandate of USCA issued May 15, 2024, Dkt. No. 33).  The Court subsequently granted Orrego's motion to lift the stay and reinstate her action.  (Order dated Feb. 10, 2025).[5]

On March 21, 2025, Orrego filed an Amended Complaint also alleging a RICO violation but adding new defendants.  (Am. Compl. at 3–6).  The Court ordered full briefing on the Defendants' motions to dismiss.  (Order dated Apr. 15, 2025). Defendants again seek dismissal of Orrego's RICO claim.  (First Choice & Dr. Hochfelder Mem. in Supp. of Mot. to Dismiss ("First Choice & Dr. Hochfelder Mot."),

---

[4] Orrego has commenced several other actions in the Eastern District of New York.  *See Orrego v. Knipfing,* No. 20-CV-3361 (E.D.N.Y. filed July 23, 2020); *Orrego v. Savitsky*, No. 24-CV-7247 (E.D.N.Y. filed Nov. 27, 2024); *Orrego v. Kerrigan*, No. 25-CV-0736 (E.D.N.Y. filed Feb. 3, 2025) (dismissed for failure to pay filing fee on July 2, 2025); *Orrego v. Wilson*, No. 25-CV-0769 (E.D.N.Y. filed Feb. 3, 2025) (dismissed for failure to pay filing fee on July 2, 2025).

[5] This case was transferred to the undersigned on January 31, 2025 from Judge Joan M. Azrack.

5

Dkt. No. 81-1; Pasternack Mem. in Supp. of Mot. to Dismiss ("Pasternack Mot."), Dkt. No. 89).[6] The motion is granted.

## DISCUSSION

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotation omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule

---

[6] Because Defendants' separate briefs raise substantially similar arguments for dismissal, the Court addresses their arguments together.

12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives.  Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotation omitted).  Because Orrego is proceeding pro se, the Court construes her Amended Complaint "to raise the strongest claims [it] suggest[s]." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).  However, her pro se status does not permit the Court to read into her "submissions claims that are not consistent with [her] allegations, or arguments that the submissions themselves do not suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quotation omitted).

    RICO makes it "unlawful for any person employed by or associated with an enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  RICO provides a private right of action for "[a]ny person injured in his business or property by reason of

7

a violation of section 1962."[7] *Id.* § 1964(c). For a RICO claim to survive a motion to dismiss a plaintiff must adequately allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Liang v. Home Reno Concepts, LLC*, 803 F. App'x 444, 447 (2d Cir. 2020) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018)).

"The RICO statute defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018) (quoting 18 U.S.C. § 1961(4)). Several principles guide the determination whether a complaint has adequately alleged the existence of an enterprise. As is the case with all RICO elements, "conclusory naming of a string of entities does not adequately allege an enterprise." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385

---

[7] Defendants argue that Orrego lacks standing because the denial of workers compensation benefits does not constitute an injury to her "business or property." (First Choice & Hochfelder Mot. at 12–15) (citing *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 613–14 (2025)). But the Supreme Court in *Horn* did not address the question whether the term "business" encompasses "employment," 604 U.S. at 600, or the loss of "current and future wages and [plaintiff's] insurance and pension benefits," *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 136 (2d Cir. 2023), *aff'd and remanded on other grounds*, 604 U.S. 593 (2025). And thus, wage or related economic harm remains a cognizable RICO injury, at least in this Circuit. *Horn*, 80 F.4th at 136 ("[W]hen Horn lost his job, he suffered an injury to his business within the plain meaning of § 1964(c)."). Separately, Orrego has sufficiently alleged that the RICO conduct is the proximate cause of her injury—the alleged fraud perpetuated by Defendants led to the workers compensation denial. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003), *abrogation on other grounds recognized by Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).

8

F.3d 159, 175 (2d Cir. 2004) (quotation omitted).  In addition, allegations that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, . . . is not . . . enough to show that the individuals were members of an enterprise."  *D'Addario*, 901 F.3d at 101 (quotations omitted).  Relatedly, the alleged RICO enterprise must be distinct from the defendants themselves.  "A corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' but the same entity cannot be both the RICO person and the enterprise."  *U1IT4less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (citations omitted) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.").

      Here, at a minimum, the Amended Complaint fails to establish the existence of a RICO enterprise.  The Amended Complaint repeatedly refers to Pasternack as the "Enterprise."  (Am. Compl. ¶ 1; *see also* ¶¶ 16, 18(b), 33, 50, 59, 60).  No other entity or group is identified as an enterprise.  But the Amended Complaint also names Pasternack as a defendant, (*id.* at 2–3); it, therefore, cannot be the RICO enterprise.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (concluding that a RICO "enterprise" is "not simply the same 'person'" accused of racketeering "referred to by a different name"); *e.g., Bennett v. U.S. Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985) (affirming dismissal of a complaint that alleged the corporate defendant was "simultaneously the 'enterprise' and the 'person' who conduct[ed] the affairs of the enterprise through a pattern of racketeering activity").  The inclusion of the individual Pasternack law firm

9

associates as Defendants in the Amended Complaint does not remedy the deficiency. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) ("[The Second Circuit] ha[s] long since rejected the idea that a RICO enterprise may consist merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant[.]" (quotation omitted)).

To the extent Orrego identifies the "Enterprise" as "involving First Choice, Hochfelder, Pasternack Law Firms, and others," (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss filed Aug. 8, 2025 ("Pl.'s Opp'n"), Dkt. No. 82 at 31), she has failed to allege that this constitutes an association-in-fact enterprise. Such an entity is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). To qualify as such, a group must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009); *see also D'Addario*, 901 F.3d at 100. The Amended Complaint fails to allege these elements.

*First*, Orrego fails to allege a shared purpose: the members of the association must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 667–68 (2d Cir. 2014) (quotations omitted). Orrego alleges that the Defendants worked together "towards the same goal" of getting her claim denied, (Am. Compl. ¶ 50), by "tarnish[ing] [her] reputation by casting doubt on her integrity" (*id.* ¶ 68). But Orrego fails to allege specifics as to this shared purpose, such as allegations

10

that each defendant benefited in any way from the enterprise, why the Defendants would share the goal, or any specific factual allegations about the intent of any individual defendant.  *See D. Penguin Bros.*, 587 F. App'x at 668 (finding plaintiff failed to allege a plausible common purpose based on similar omissions).  Her conclusory statement that Defendants "functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise," (Am. Compl. ¶ 3), on its own does not satisfy this requirement.  *See D. Penguin Bros.*, 587 F. App'x at 668.

Orrego attempts to draw a connection between First Choice coordinating her IME, Dr. Hochfelder producing a false report, and Pasternack failing to challenge the report, (Pl.'s Opp'n at 32).  But even if their individual actions led to the same alleged result (denial of the claim), there is no basis to infer—that is, there is no fact or evidence cited that would permit the inference—that they were acting on behalf of an enterprise, as opposed to simply themselves.  *See D. Penguin Bros*, 587 F. App'x at 668 (rejecting plaintiffs' association-in-fact theory where plaintiffs "fail[ed] to provide a plausible basis for inferring that [the two defendants] acted on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." (quotation omitted)).  For instance, Orrego provides no allegations as to why First Choice's selection of Dr. Hochfelder was for the purposes of advancing the enterprise's goal as opposed to part of its regular practice.  Nor does she provide allegations that tie Pasternack's decisions in omitting certain evidence/failing to challenge the IME report to the enterprise's goal, as opposed to a strategic decision made by a lawyer during an adversarial proceeding.  Given that two of the three

11

Defendants were acting against Orrego's interests (while Pasternack was her lawyer), the Amended Complaint must contain some factual allegation to suggest that Pasternack switched sides and colluded with Dr. Hochfelder and First Choice.  And Orrego does so only in a conclusory fashion without any fact on which such inference can be drawn.  The Amended Complaint "do[es] not come close to knitting [Defendants] together in any solid or coherent way in concerted acts towards a common end."  *Black v. Ganieva*, 619 F. Supp. 3d 309, 332–33 (S.D.N.Y. 2022) (finding no RICO enterprise), *aff'd*, No. 22-1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023); *e.g.*, *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 577 (S.D.N.Y. 2017) ("Without an explanation of how defendants' incentives would align or references to specific instances of collusion, it is not plausible to infer that defendants shared a common purpose[.]").  "RICO's common purpose requirement demands more than general synchronicity or shared enmity."  *Black*, 619 F. Supp. 3d at 333.  That is not present here.

      Relatedly, Orrego fails to allege a structured relationship among the Defendants, including their roles.  "[R]elationships among those associated with the enterprise" are essential to a RICO association-in-fact enterprise.  *Boyle*, 556 U.S. at 946.  Where a complaint alleges an association-in-fact enterprise, courts look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a unit."  *Satinwood,* 385 F.3d at 174 (quotations omitted).  Orrego alleges that "[t]he Defendants and other members and associates of the enterprise had connections and relationships with one another and with the enterprise," (Am. Compl.

12

¶ 3), but beyond such conclusory statements, she makes no factual allegations about what those connections and relationships entailed.  For example, the Amended Complaint identifies no relationship between Pasternack and First Choice (rarely mentioning First Choice's involvement at all).  The only interactions seemingly connecting these Defendants is participation in the WCB proceedings, where notably, Orrego has failed to allege what Pasternack stood to gain in working with Dr. Hochfelder and First Choice, when their interests were adverse, nor how they went about doing so.  (*E.g.*, Am. Compl. ¶ 60 (alleging that Pasternack's associate "not only protected Dr. Hochfelder but also encouraged him to obstruct justice" with no factual allegations as to how or why)).  These defects mean that the Amended Complaint—whatever the connections between the Defendants may have been—has not identified an enterprise associated in fact.  *See Stevenson v. Thornburgh*, No. 23-CV-4458, 2024 WL 645187, at *13 (S.D.N.Y. Feb. 14, 2024) ("[N]ot pleading interpersonal connections between most—or all—of the Defendants is a fatal defect[.]"); *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, No. 11-CV-7801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) ("The Amended Complaint's failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal.").

*Second*, and as a separate issue, the Amended Complaint does not sufficiently allege an enterprise that is "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.  The only alleged relationship between the Defendants is to commit fraud in Orrego's WCB proceedings, the very "pattern" of

13

activity underlying her claim.  Orrego's vague and conclusory accusations that Defendants operated as an enterprise for the purpose of engaging in "criminal, unlawful, or illegal activities" in connection with her claim, (Am. Compl. ¶ 6), even if taken as true, merely establish that Defendants acted together to commit the wrong—perpetuating fraud.  *See Lynn v. McCormick*, No. 17-CV-1183, 2017 WL 6507112, at *5–*6 (S.D.N.Y. Dec. 18, 2017) (dismissing where plaintiffs failed to allege a RICO enterprise because they merely "allege[d] that Defendants came together for the purpose of engaging in the fraudulent activity that form[ed] the basis of the asserted pattern of racketeering activity," rendering the enterprise and the pattern "one and the same"); *Long v. Zhuang*, No. 22-CV-1293, 2024 WL 4250308, at *10 (E.D.N.Y. Aug. 8, 2024) ("Phrased another way, [t]he defendants cannot be grouped together for the sole reason that they all allegedly had [involvement] in the alleged acts . . . Plaintiffs' failure to distinguish between the enterprise and its alleged illegal acts is fatal to the RICO claims." (quotation omitted)), *report and recommendation adopted*, Order dated Sep. 16, 2024.

Given that Orrego has failed to plead the existence of an enterprise, her RICO claim is dismissed.  *See Scheiner v. Wallace*, 832 F. Supp. 687, 699 (S.D.N.Y. 1993) ("The failure of any one element is fatal to a RICO claim.").[8]

---

[8] Defendants argue that Orrego fails to satisfy other elements for a RICO claim, (Pasternack Mot. at 12), including failing to allege a pattern of racketeering activity, (First Choice & Hochfelder Mot. at 21), and a failure to plead fraud with particularity, (*id.* at 23).  Because the Court concludes that Orrego fails to identify an enterprise, the Court does not reach these other issues.

14

CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss Orrego's RICO claim.[9]  Because Orrego has already amended her complaint, and did so with the benefit of Defendants' prior requests for premotion conference—which identified the same deficiencies that lead to the dismissal here, (*see* First Choice & Hochfelder PMC Mot. at 2–3; Pasternack PMC Mot. at 2), but which she failed to cure— leave to amend is denied.  *See Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) ("'Repeated failure to cure deficiencies by amendments previously allowed' is a valid reason to deny leave to amend." (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).  Additionally, nothing in the Amended Complaint suggests any new facts that could cure the identified deficiencies, so further amendment would ultimately prove futile.  *See Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020)

---

[9] Orrego added claims against seven new defendants in the Amended Complaint: Ginu Jacob, Esq., Sam Cohen, Esq., Joseph Mercurio, Esq., Andrew Ziemianski, Esq., Matthew Funk, Esq., Lewis Heller, Esq., and Mariana Vizuete (collectively, "Individual Defendants").  (Am. Compl. at 3–5, ¶¶ 7–8; *see also* Order dated Dec. 1, 2025 (granting Orrego's motion to substitute Dara Clarke as Executrix of the Estate of Lewis Heller for the deceased defendant Lewis Heller)).  Orrego alleges that the Individual Defendants were employed by Pasternack during the WCB proceedings and "enabled the manipulation and falsification of medical documentation without oversight."  (Am. Compl. ¶ 29).  At the time the Motions to Dismiss at issue here were filed, the Individual Defendants had yet to be served.  These Defendants have now requested a premotion conference to move to dismiss Orrego's claim against them for largely identical reasons as raised by the Defendants here.  (Defs.' Mot. for PMC dated Nov. 14, 2025, Dkt. No. 126; Defs.' Mot. for PMC dated Jan. 6, 2026, Dkt. No. 141). The problems that infect the RICO violations against the Defendants apply with equal force to those added by the Amended Complaint.  The Court finds it appropriate to dismiss the claims against them as well.  *See Tyler v. Carter*, 151 F.R.D. 537, 540 n.2 (S.D.N.Y. 1993) (sua sponte dismissing action with prejudice as frivolous as to all defendants pursuant to Rule 12(b)(6) even though only some defendants moved to dismiss), *aff'd*, 41 F.3d 1500 (2d Cir. 1994).

15

(affirming denial of leave to amend a second time on futility grounds in light of factual deficiencies).  The Amended Complaint is dismissed in its entirety with prejudice.[10]

                                                 SO ORDERED.

                                                 */s/ Sanket J. Bulsara*
                                                 SANKET J. BULSARA
                                                 United States District Judge

Date:   January 16, 2026
          Central Islip, New York

---

[10] To the extent Orrego seeks reconsideration, the filing injunction is lifted.  Any such motion must comply with the timing and word limits for such motions.  *See* Local Civil Rule 6.3.